Good afternoon, your honors. May it please the court, my name is Anne Glennon and together with my co-counsel Marisa Campagna, we represent the Plaintiff Appellant Chief Kevin C. Robinson. I would like to respectfully request that I reserve two minutes for rebuttal. Thank you. Chief Robinson has set forth sufficient evidence to establish genuine issues of material fact with respect to each of his claims in this matter. The question before the district court, and now this honorable court, is not whether Chief Robinson will ultimately prevail before a reasonable jury, but whether a reasonable jury resolving credibility, factual, and inference issues in Robinson's favor could side with him, as this court noted in Reed v. MBNA Marketing Systems. Before you get to that, I need some help with the facts. Okay. He was working without the benefit of a contract when all of this happened, is that correct? That is technically correct, but as the defendants and the defendants' witnesses, as the individual defendants, Hall and Longo, as well as others of the defendants' witnesses, I believe, testified, it wasn't uncommon that employees that worked under contract for the town would continue to work under that same contract and under its terms even after it hadn't been officially renegotiated and signed. So he continued to work. Has there been a specific vote that his contract not be renewed? They voted not to negotiate its renewal without the benefit of giving him an opportunity to be heard, allegedly due to... Something that, if you're working pursuant to a contract, is there some due process other than you've reached the expiration date of the contract? No, the town had basically just operated under past practice that if you continued to be employed, even though the contract hadn't officially been renewed and signed by the parties, that you would be continuing to be employed under the terms of the pre-existing contract. So is that entitlement to employment? Unless and until they decide to terminate him. They didn't terminate him when they decided not to renegotiate his contract. They didn't terminate him at that point. They just weren't going to renegotiate. They decided in June, I believe, of 2014, shortly after he opposed the gender discrimination in his department, that they were not going to renegotiate it at that time. And he continued to work. When they took the vote not to renew, wasn't it based upon morale issues? That's what they alleged after this litigation was filed, Your Honor. What was alleged at the time they made the vote not to renew? I believe that they alleged that it was just general performance issues, whether it was the ethics violations were at the heart of this matter or the belatedly asserted issues of... Did ethics violations come up before the vote? Yes. Those began in January. Well, I'm talking about the vote not to renew. Right. The ethics issues arose in January of 2014. The vote not to renew was in June 2014. Okay. So the issues surrounding the family members? Right. So, as I was saying, in dismissing all of Chief Robinson's claims, the district court invaded the jury's province by resolving disputed issues of material fact and making credibility determinations. And to rely at summary judgment on evidence that a jury is not required to believe is to engage in improper fact-finding, you know, per Reeves v. Sanderson Plumbing and, you know, cases following that. In this matter... Is there any evidence to support age discrimination other than you need to retire before your reputation gets harmed? Yes, Your Honor. They are... First of all, within six months, three times they approached Chief Robinson referencing his 35 years of service and saying that... Suggesting, quote, that he retire or risk damage to his reputation, threats that they did follow through on. Mr. Robinson was replaced with an individual approximately a decade younger than he, who was lesser qualified, yet paid $17,000 more than he. And then there's also, you know, all of the other items listed in that page, I think. Well, tell me what they are. I think as far as, like, direct evidence, it's those that's direct evidence. And then, obviously, the replacement being younger and less qualified. I think the list... Excuse me? Is there any other circumstantial evidence? Of age discrimination? I don't believe so. The list I was referring to was the various adverse actions that took place with respect to Mr. Robinson's employment. All right. So you should retire before your retirement. But they harmed his reputation without cause, without basis. And they threatened him. And I think in the case of... The discrimination piece right now. Right. In the case of, I think it was Calhoun... Greenberg, excuse me. The court held that... This court held that repeated and coercive inquiries regarding retirement can give rise to an inference of underlying constructive discharge issue as well. And in that case, I believe the person was questioned about retiring three times in seven months. What I was going to say next, Your Honor, was that in the instant matter, the parties dispute nearly all of the material facts at issue, most of which are common to all of the plaintiff's claims. Issues surrounding the plaintiff's performance. Issues surrounding the terms and conditions of his employment. Issues surrounding Patton's employment. Issues surrounding what the ethics disclosures and then the subsequent agreement entered into between the town and Chief Robinson regarding how things should be handled with respect to Ms. Patton and the ethics laws in general. What was required by those? Whether Mr. Chief Robinson, excuse me, or the defendants abided by those disclosures and agreements. Were those agreements in writing? Yes. They were the disclosures that he entered into despite the fact that under the state ethics law, his niece is not even considered to be a media relative. But, you know, doing his due diligence, he entered into those disclosures. The Board of Selectmen within those disclosures outlined exactly what he should and should not do. What recommendations he was required to ratify and what recommendations he was not required to ratify. Chief Robinson, as the record supports, abided by those disclosures. And then subsequent, when the issue arose in January of 2014, that Ms. Patton was being treated differently than the male trainees in her department, and he brought that concern to the attention of the town, they entered into a substantive agreement, I think on January 20th, 2014, where they adjusted some of that. And the town had some obligations under that agreement. And Chief Robinson had obligations under that agreement. The record will indicate that Chief Robinson followed that agreement. The town, however, did not. And then at one point, they put the matter then back into his hands and it moved forward. Ms. Patton ultimately resigned. It wasn't until seven months after her resignation and after Chief Robinson didn't, didn't acquiesce to their repeated demands that he retire, that they actually pursued that. Thank you. Mr. Davis? Good afternoon, Your Honors. May it please the Court, John Davis on behalf of the defendants. Upon their receipt of a 35-page report from an independent investigator, the board of selectmen found Mr. Chief Robinson in violation of, I think, four different sections of 268A, and I think somewhere between 15 and 18 separate violations of the state ethics laws. The board of selectmen provided a copy of that report to Chief Robinson, placed him on paid administrative leave, and then invited him to come in to a show-cause hearing to explain why his position, he should not be eliminated from his position. About 10 days later, Chief Robinson tendered his resignation. He put it in writing and he said that he wanted, he didn't want to resign, he said he wanted to retire so that he could spend more time with his wife, his family, and his children, his grandchildren. The board of selectmen accepted that resignation. They did not go forward with any further proceedings with respect to discipline. They paid Chief Robinson about $86,000 in change to buy back unused vacation time, stress time, and sick days. The undisputed facts in this case show that the town did not discriminate against the, I'm sorry. Would a termination versus a retirement have impacted his pension? Yes, I think he then went on to, I'm not sure the record reflects this, but I think he then applied for a pension. Would he have been eligible for a pension had he been terminated? Yes, unless they found him in violation of some crimes. So we maintain that the undisputed facts show that he was not discriminated against because of his age and he was not retaliated against for engaging in protected activity. Let me address first the age discrimination. Judge Gordon's decision is based upon three separate grounds, any one of which would sustain the decision below. The plaintiff failed to show an adverse employment action, a material adverse employment action, which is what he has to show. He maintained that he was constructively discharged and the court said that there was not sufficient evidence to support a constructive discharge. He failed to show that the town did not treat him age neutrally, or in other words, that age was a determining factor in their disciplinary process based upon the results of the investigation, and that the town had shown, demonstrated that their decision was based upon legitimate and non-discriminatory reasons. The constructive discharge, I think, Your Honors, is key. The plaintiff maintains here that he had no choice, that upon his receipt of that show cause letter inviting him to come in for a hearing, his choices were either resign or be fired. But he was not between such a rock and a hard place as he would suggest. He had a choice. He had an opportunity. He could have come in and contested the allegations, could have contested the report's findings, and he was invited to do so. And as you know, a four cause hearing can result in a number of different outcomes. He could have been exonerated. He could have been reprimanded. He could have been suggested to get further training with respect to state ethics. He might have been suspended. He might have been demoted. But instead, he jumps to the conclusion that I'm going to be terminated, and therefore I have to quit. The law says, and the judge below, Judge Gorton, cited the GTE products case, which says as a reasonable employee in that situation, you're not entitled to assume the worst. You can't jump to the worst conclusion. A four cause hearing that was going to be provided to him, and the invitation appears at A104 in the record, the four cause hearing, was first of all provided with a full and complete copy of the report. He could bring an attorney to the hearing. He could call witnesses. He could present evidence. He could cross-examine any witnesses who might testify on behalf of the town. And then, in the event the outcome was unfavorable to him, he still had a right of appeal under state law by an action in the nature of certiorari to the superior court. He can't have it both ways. He claims in his papers, and he claims in this case, that the Smith report was a failure, but yet it was so bad that it required him to make this decision and quit. I'm still trying to understand what the impact, if any, of the decision not to renew contract has in this case. He was still working. Right. He was still working. For the benefit of a contract. And the timing, I think the timing is important more to the retaliation case, Judge, but because he raised issues of gender discrimination against his niece back in April of 2014. He was, at that time, he was already under investigation. They had already reported, based upon a meeting that they held because of his interference with Shauna, because of his interference with his brother, they had already reported him to state ethics. And the town was awaiting some sort of investigation to be conducted by state ethics. They said in June of 2014, we're not in a position to give you a raise, which is what he asked for, or enter into further contract negotiations unless and until we have an outcome on this state ethics investigation. And it was around that time the town council met with him and said, you know, chief, you know, you might want to consider retirement instead of going through this process because it may get ugly for you. That's what they rely upon for the age discrimination. The state ethics still did not complete their investigation, and it wasn't until the fall, I think it was November of 2014, that the town actually hired Attorney Smith to conduct this full and complete investigation. And while he's doing that, he's interviewing firefighters, he's reviewing documents, and it's while he is, Chief Robinson is under that cloud, that he then complains in January of the age discrimination. So Judge Gordon cited below the HEI hospital case where he says, look, proximity is always important in these cases, proximity of time. Certainly with respect to Shauna, he wasn't subjected to a disciplinary process until 11 months after he had complained about Shauna. So that doesn't get him an inference, it doesn't get him a proximity instruction if this case were to go to the jury. With respect to the age discrimination complaint on his own behalf, that was made right at the heat of this investigation while the investigation is ongoing. And the HEI hospital case says you're not entitled to derail something that's in the works just because you have come forward with a complaint of age discrimination. The employer is still entitled to go forward with what they were already contemplating, which was let's look into this, let's look into these issues, and then, if necessary, proceed accordingly. And that's what they were doing. And so when he then, when they get the report the following month, that's when they meet, they decide we have to go forward and have a hearing, and he was placed on paid administrative leave, and then he quit. So that's the set of circumstances. So we maintain that he can't maintain an age discrimination case because he hasn't got the facts to support that, and Judge Gordon agreed, he's not a constructive discharge, and he can't maintain, he can't show that there's a causal relationship between his protected activity, okay, if we give him credit for saying, yeah, you came forward, you complained about Shawnee, you complained about yourself, but there's not a causal relationship between your protected activity and what you maintain is an adverse employment action. And that's even assuming the constructive discharge could be an adverse employment action, which it is not. So we maintain that both with respect to the judgment below should be affirmed. As you know, the plaintiff has also maintained actions here of defamation, intentional interference with contractual relations. Judge Gordon had a litany of grounds and terms, including the fact that he would have to show malice for both of those types of claims and could not show malice and did not have sufficient facts to support an inference of malice. And finally, with respect to the breach of contract, the judge said those are nonessential terms, they're not inducing to the contract, and there was insufficient evidence to support a claim for breach of contract. So based upon those grounds and the rationale below, Your Honors, we maintain that the decision should be affirmed. Thank you very much. Your Honors, first of all, complainant has, the plaintiff has not asserted a claim, and the argument was not fully established below by the appellees, but had it been, I think that Chief Robinson has put forth sufficient evidence where a jury could find that he was reasonable in not availing himself of the show cause hearing, given the totality of the circumstances of everything that had transpired in the 12 months, 13 months prior to his resignation, particularly those that escalated in the few months prior to his resignation or retirement. Constructive discharge is not determined by how much due process you get, it's determined by intolerable working conditions and or an ultimatum. And the plaintiff's pension would have been diminished because he would have worked and could have worked for another five years, potentially. In addition, I believe the court, as outlined in our brief, the court made numerous factual  errors and numerous findings of fact that are just not supported by the record. In closing, the first report to the SEC resulted in no action whatsoever. The 35-page report, which basically the town bases all of its defense of cause, is at question here. There is abundance of evidence, although the district court said that we recognized, we stated that the investigation was a sham, stated that we provided no evidence of that, that's simply not true. There's an abundance of evidence that Smith, may I finish? May I finish? That investigator Smith refused to even interview Chief Robinson and refused to ask anyone the ultimate question of whether he provided Ms. Patton any treatment that was not accorded anyone else. And there's abundance of disputed facts on that. And there's also facts on the findings of the report, how the findings were going to be worded. And nowhere in that decision does Smith recommend that he be terminated. He says that they should refer it to the SEC. Thank you. Thank you. Thank you. Thank you. Thank you.